IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHAD EPSEN, individually and on behalf of all others similarly situated, : : : | |
| Plaintiff, : : | CIVIL ACTION NO. |
| v. : : | CLASS ACTION COMPLAINT |
| CERTAINTEED CORPORATION, : : : | JURY TRIAL DEMANDED |
| Defendant. : | |

## CLASS ACTION COMPLAINT

Plaintiff Chad Epsen ("Plaintiff" or "Mr. Epsen"), individually and on behalf of all others similarly situated, brings this action against CertainTeed Corporation ("CertainTeed"). The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others:

## NATURE OF THE ACTION

1. Plaintiff brings this nationwide consumer class action against CertainTeed on behalf of all persons and entities who purchased CertainTeed WeatherBoards FiberCement exterior siding products (the "Siding") manufactured by CertainTeed from 2000 to the present (the "Class").

2. This lawsuit arises out of damages sustained by Plaintiff and the Class that were proximately caused by CertainTeed's defective Siding used in the construction of Plaintiff and Class members' homes and other structures, or that was otherwise installed on the homes and structures of Plaintiff and the Class.

3. At all times material hereto, CertainTeed manufactured and marketed the defective Siding, and such products have been marketed, represented and warranted by

CertainTeed to be durable, long-lasting, and appropriate for use on the homes and other structures of Plaintiff and the Class.

## PARTIES

4. Plaintiff Chad Epsen resides at 13560 211th Avenue NW in Elk River, Minnesota.

5. Mr. Epsen built his home in 2004 using CertainTeed Siding. Subsequently, in 2006, the Siding began to warp and shrink.

6. In 2008, the installer who originally installed the Siding repaired the damaged boards under his own warranty, and replaced them with new CertainTeed Siding.

7. In 2009, Mr. Epsen noticed more warping and shrinkage. By 2010, he saw cracking, gapping, paint chipping, delaminating, boards coming loose, and nails pulling up on the Siding on each side of his home.

8. Mr. Epsen thereafter contacted CertainTeed, who sent an inspector to his home. The inspector determined that Mr. Epsen had a valid claim and told Mr. Epsen that the damage was related to the CertainTeed Siding and not the installation. A warranty manager for CertainTeed told Mr. Epsen that CertainTeed would pay for new CertainTeed Siding for his home and $280 worth of paint. Mr. Epsen requested that CertainTeed pay for the significant labor costs of removing the defective Siding on his home, new house wrap, nail removal and other costs associated with replacing the Siding. He also requested that CertainTeed pay for the labor costs of having new Siding installed.

9. CertainTeed responded that "under no circumstances" would it pay for any labor involved in the removal of the existing Siding or the installation of new Siding, nor any other associated expenses, other than the $280 worth of paint. The defective and damaged CertainTeed Siding remains on Mr. Epsen's home to this day.

10. Defendant CertainTeed Corporation ("Defendant" or "CertainTeed") is a Pennsylvania corporation with its principal place of business located at 750 E. Swedesford Road, Valley Forge, Pennsylvania 19482. CertainTeed is a major North American manufacturer of building materials including roofing, siding, insulation, windows and patio doors, fence, decking, railing, foundations and pipe. CertainTeed and its affiliates have more than 7,000 employees and more than 70 manufacturing facilities throughout the United States and Canada. CertainTeed is a subsidiary of Saint-Gobain, a multinational building products company with subsidiaries in 57 countries and more that 206,000 employees, including 22,000 in North America. CertainTeed manufactures, distributes and sells CertainTeed exterior siding nationwide.

## JURISDICTION AND VENUE

11. Defendant CertainTeed is headquartered in Montgomery County, Pennsylvania and conducts substantial business in this District, including the sale and distribution of the Siding in this District. This Court has jurisdiction over Defendant because CertainTeed is a resident of this District and otherwise has intentionally availed itself of the laws and markets of Pennsylvania.

12. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d). Plaintiff Chad Epsen is a citizen of Minnesota and Defendant is a citizen of Pennsylvania. Moreover, there are more than 100 Class members residing in multiple states, and the amount in controversy exceeds Five Million Dollars ($5,000,000.00).

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391, ., because Defendant's principal place of business is located in Valley Forge, Pennsylvania, within this District.

## SUBSTANTIVE ALLEGATIONS

### I. CertainTeed Breached Its Warranties With Plaintiff And The Class

14. CertainTeed markets and affirmatively represents that its Siding is "the best-looking, finest-performing product of its kind" and "the finest cement siding you can buy." CertainTeed's marketing materials tout that its siding is "engineered for decades of superior protection, wear and durability," has "superior durability" and "does not succumb to the stress of freeze-thaw cycles." The materials also state that the siding "will not warp or rot."

15. These bold and definitive statements directly contradict the experience of the Plaintiff and the Class, and amount to substantial misrepresentations of material facts.

16. CertainTeed provides a limited 50-year warranty (attached as Exhibit 1) that its product will be "free from manufacturing defects." The warranty states that "CertainTeed will pay to repair or replace, at its option, any WeatherBoards FiberCement Siding determined to be defective during the 50-year period following its installation" subject to a yearly 2% proration after two years.

17. CertainTeed also provides a two year warranty called "SureStart Protection." This warranty feature provides:

> [u]nder this warranty feature, CertainTeed will pay to repair or replace, at its option, any WeatherBoards FiberCement Siding proven to be defective during the two-year SureStart Protection period . . . CertainTeed's maximum liability under SureStart Protection will be equal to the reasonable cost to replace or repair the defective material at current value, including labor in connection with removal, repair or installation of either the original or replacement WeatherBoards FiberCement Siding . . . .

18. Plaintiff's damages far exceed the amounts that CertainTeed has agreed to pay pursuant to it's express 50- year warranty. The Siding on Mr. Epsen's home has failed and will continue to fail. Mr. Epsen has experienced gapping, warping, cracking, paint chipping, loose nails and siding pulling away from his home. The labor costs of removing the existing defective

4

product are substantial. Likewise the labor costs of installing new siding are also substantial. The costs of installation are compounded by other necessary expenses such as nails and new house wrap. In addition, there are costs associated with coating and painting the new siding after installation. CertainTeed's warranty offer to simply pay for new CertainTeed Siding material and $280 in paint is inadequate.

19. As a direct and proximate result of purchasing CertainTeed's defective Siding, Plaintiff continues to suffer damages in the form of diminution in value of his home. These damages are ongoing as long as CertainTeed's defective Siding remains on his home.

20. The damages suffered by Plaintiff were wholly foreseeable by CertainTeed. The manufacturing, production, marketing, distribution and sales of its defective product were and are in the complete control of CertainTeed. CertainTeed has received and continues to receive numerous complaints and claims from homeowners, property owners, developers and installers regarding the failure of CertainTeed Siding, and thus, CertainTeed knew, or should have known, that its product was defective. In fact, CertainTeed changed the formulation of its Siding in 2007 in response to numerous complaints, but the same problems have persisted, and the Siding remains defective.

21. Plaintiff justifiably relied on CertainTeed's claims of strength, durability and long-term quality performance of its product, and consequently, has suffered damages.

22. CertainTeed has failed to take any steps to notify Plaintiff and Class members on a class-wide basis of the defects in its Siding product and continues to benefit from the sales of its defective product nationwide.

23. CertainTeed has failed to take steps to adequately compensate Plaintiff and the Class and make them whole for the damages they have suffered, and continue to suffer resulting

from the purchase of the defective Siding.

## II. Tolling of Statutes of Limitation

24.     The statutes of limitations applicable to Plaintiff's and the Class members' claims should be equitably tolled.

25.     Plaintiff and the Class had no knowledge of, and no way of discovering the defects latent in CertainTeed's Siding at the time they purchased the product and it was installed on their homes and structures.

26.     CertainTeed did not notify, inform or disclose to Plaintiff and the Class that there were defects in their Siding products.

27.     Plaintiff acted immediately upon noticing the product failing by notifying CertainTeed and participating fully in their warranty claim process.

28.     CertainTeed representatives affirmatively misrepresented to Plaintiff and Class members that the damages they observed were the result of normal wear and tear on the product. Statements such as these constitute an active effort to conceal and misrepresent the true causes of the damage and hide the fact that the product is defective.

29.     Because CertainTeed failed in its duty to notify Plaintiff and Class members that its product was defective and actively attempted to conceal this fact, the statute of limitations should be tolled on Plaintiff's claims.

## CLASS ACTION ALLEGATIONS

30.     This action is brought and is properly maintained as a nationwide class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3), on behalf of Plaintiff and a Class of similarly situated individuals and entities defined as follows:

> All individuals and entities that own, have acquired or were assigned homes, residences, buildings or other structures physically located in the United States on which CertainTeed

WeatherBoards FiberCement siding has been installed since 2000 (the "Class").

31.   The Class is so numerous that individual joinder is impracticable. The actual number of Class members is unknown at this time, but on information and belief, will likely number in the thousands. The actual number of Class members can be determined through records in the possession of Defendant.

32.   Numerous questions of law and fact common to Plaintiff and the Class, predominate over any questions that may affect individual Class members, including but not limited to:

    a.   Whether CertainTeed's Siding is defective;

    b.   Whether the Siding is subject to shrinking, warping, gapping, cracking, paint chipping, pulling out nails, delaminating and separating from structures and is not suitable for use as an exterior siding product;

    c.   Whether CertainTeed knew or should have known of the defective nature of its Siding before putting it into the stream of commerce for purchase by Plaintiff and the Class;

    d.   Whether CertainTeed owed a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the formulation, production, testing, design, manufacture, warranting and marketing of its Siding;

    e.   Whether CertainTeed breached its duty to Plaintiff and the Class by designing, manufacturing, producing, marketing, advertising and selling to Plaintiff and the Class defective Siding;

    f.   Whether CertainTeed breached its duty to Plaintiff and the Class to promptly remove the defective Siding from the marketplace or take other appropriate remedial

7

action;

  g. Whether the Siding failed to perform in accordance with the reasonable expectations of ordinary consumers such as Plaintiff and the Class;

  h. Whether CertainTeed's Siding fails to perform as advertised, marketed and warranted;

  i. Whether CertainTeed breached its express warranties to Plaintiff and the Class by advertising, marketing and selling defective Siding to Plaintiff and the Class and refusing to cover the full costs associated with replacing the defective Siding;

  j. Whether CertainTeed breached its implied warranties to Plaintiff and the Class by advertising, marketing and selling Siding that was not of a merchantable quality, nor fit for the ordinary purpose for which it was sold, and refusing to cover the full costs associated with replacing the defective Siding; and

  k. Whether Plaintiff and the Class are entitled to compensatory damages, and the amount of the costs of removal and replacement of the defective Siding, and for damages resulting from the diminution of value of Class members' homes and other structures.

33. Plaintiff's claims are typical of the claims of the Class, in that Plaintiff, like all Class members, had defective CertainTeed Siding installed on his home and has experienced product failure resulting from those defects. The effects seen by Plaintiff when his Siding failed are similar to the effects seen by other Class members across the country. Plaintiff and all Class members suffer damages in the form of unreimbursed costs associated with replacing the defective Siding and diminution in the value of their homes.

34. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained experienced counsel with the necessary expertise and resources to prosecute a

nationwide consumer class action. Plaintiff and his counsel do not foresee any circumstances where the interests of Plaintiff would be adverse to the interests of the Class.

35. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. It would be economically impractical for Plaintiff and Class members to pursue individual actions against CertainTeed as the costs of prosecution would likely surpass their individual damages. Thus, Plaintiff and Class members would be left with no effective remedy for the damages they suffered and continue to suffer. Class treatment of Plaintiff's claims will permit Plaintiff and the Class to vindicate their rights against CertainTeed, and conserve the resources of the Court and the Parties. Class treatment will also avoid the possibility of inconsistent outcomes that could result from a multitude of individual actions in varying jurisdictions nationwide.

## CAUSES OF ACTION

### COUNT I:
### BREACH OF CONTRACT – EXPRESS WARRANTY

36. Plaintiff incorporates by reference each of the foregoing allegations.

37. CertainTeed marketed and sold its Siding with the intent that it would be purchased by Plaintiff and Class members.

38. The written warranty Plaintiff and Class members received with CertainTeed's Siding constitutes an express warranty as set forth in Uniform Commercial Code provisions such as 13 Pa. C.S.A. § 2313.

39. The warranty specifically states that the Siding "will be free from manufacturing defects" for a period of fifty years.

40. In fact, CertainTeed's Siding began manifesting defects and failing after only a couple years' use and in some instances, even a shorter timeframe.

41. Plaintiff and Class members have experienced shrinking, warping, gapping, cracking, paint chipping, nails pulling out, delaminating and separating from structures. These effects have been experienced by Class members in multiple states and localities. They are the result of CertainTeed's defective Siding and are not the result of improper installation, failure of other structural components, or misuse.

42. Defendant breached its express warranty to provide Plaintiff and Class members Siding free of manufacturing defects.

43. Under the "SureStart" feature of CertainTeed's warranty, the Company will cover the costs of labor to remove and replace defective Siding for a period of two years after purchase. This level of coverage is wholly inadequate to protect or make whole Plaintiff, who is now outside the two year warranty period, although the defective nature of the Siding he purchased was known while the Siding was being marketed and sold by CertainTeed. The warranty also fails to compensate Plaintiff for the damage to his home caused by the defective Siding, and does not compensate for the diminution in value of Plaintiff's home and structures.

44. Plaintiff and the Class have suffered damages by CertainTeed's breach of its express promise and warranty by purchasing and installing CertainTeed's defective Siding on their homes and structures. These defects have required Plaintiff and Class members to expend resources to repair and maintain the failing Siding and address other damages to their homes proximately cause by CertainTeed's defective Siding. Plaintiff and Class members also suffer continued diminution in the value of their homes and structures.

45. CertainTeed intentionally marketed its warranty to induce Plaintiff and Class members to purchase CertainTeed Siding by providing a false sense of security and protection in their investment. CertainTeed continued to engage in this activity, even after being put on notice

that its product was defective. In reality, not only is the warranty inadequate, but CertainTeed was in breach of the warranty the moment Plaintiff and Class members unwittingly purchased the defective product and installed it on their homes and structures.

## COUNT II:
## BREACH OF CONTRACT – IMPLIED WARRANTY

46. Plaintiff incorporates by reference each of the foregoing allegations.

47. CertainTeed manufactured and sold its Siding to Plaintiff and the Class, and in so doing, impliedly warranted to them that the product was of merchantable quality and fit for the use for which it was intended in accordance with Uniform Commercial Code provisions, such as 13 Pa. C.S.A. §§ 2314, 2315.

48. CertainTeed's Siding was, in fact, not of merchantable quality and was not fit for its intended use.

49. As described herein, CertainTeed's defective Siding failed in numerous ways including shrinking, warping, gapping, cracking, paint chipping, nails pulling out, delaminating and separating from structures. These failures make the Siding unfit and inappropriate for its intended use as a covering for building exteriors.

50. As a result, CertainTeed breached its implied warranties to Plaintiff and Class members by producing, manufacturing, marketing, distributing and selling them a defective product that was unfit for its intended use.

51. Plaintiff and Class members have suffered damages due to CertainTeed's breach of its implied warranty to them. The defects in CertainTeed's Siding have required Plaintiff and the Class to expend resources to repair and upkeep the failing Siding, address other damages to their homes proximately cause by CertainTeed's defective Siding, and suffer continued diminution in the value of their homes and structures.

## COUNT III:
## NEGLIGENCE

52. Plaintiff incorporates by reference each of the foregoing allegations.

53. Defendant had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the formulation, testing, design, manufacturing, production, marketing and distribution of its Siding.

54. Defendant breached its duty by producing and selling a defective product to Plaintiff and the Class. As described herein, CertainTeed's defective Siding failed in numerous ways including shrinking, warping, gapping, cracking, paint chipping, nails pulling out, delaminating and separating from structures.

55. CertainTeed further breached its duty by failing to notify Plaintiff and the Class of the defects in the Siding they were purchasing, and by failing to take any remedial action once it was on notice that its product was defective.

56. CertainTeed has complete control over its manufacturing, testing, production and distribution facilities and knew or should have known that its Siding was defective

57. It was also completely foreseeable to CertainTeed that Plaintiff and the Class would rely upon CertainTeed's marketing claims of long-term durability and a supposedly inclusive warranty to purchase CertainTeed Siding.

58. CertainTeed's negligence was the proximate cause of the damages suffered by Plaintiff and the Class in the form of purchasing defective Siding, installing the Siding, repairing the Siding, repairing damages caused by the Siding, and addressing the costs of removing and replacing the Siding. Plaintiff and the Class also continue to suffer damages in the form of ongoing diminution in the value of their homes and structures as a direct result of having defective CertainTeed Siding on their exteriors.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief, individually and on behalf of all others similarly situated:

 a. an Order certifying the Class, appointing Plaintiff as the Class Representative, and appointing the undersigned counsel as Class Counsel;

 b. an award of equitable and injunctive relief enjoining Defendant from pursuing the policies, acts and practices described in this Complaint;

 c. an award of damages and enhanced damages under statutory and common law as alleged in this Complaint, in an amount to be determined at trial;

 d. an award of pre-judgment and post-judgment interest at the maximum rate allowable by law;

 e. an award of reasonable attorneys' fees and reimbursement of costs incurred by Plaintiff and their counsel in connection with this action; and

 f. such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims set forth above.

Dated: January 14, 2011

/s/ _____
Lawrence Deutsch
Shanon J. Carson
James A. Wells
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Phone: (215) 875-4656
Fax: (215) 875-4604
ldeutsch@bm.net
scarson@bm.net
jwells@bm.net

*Attorneys for Plaintiff*